IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ANDREW SCHROCK,

Defendant.

No. 08-mj-358

**ORDER FOR PRETRIAL DETENTION**

On the 27th day of October, 2008, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The government was represented by Assistant United States Attorney Peter E. Deegan, Jr. The Defendant appeared personally and was represented by his attorney, Jill M. Ableidinger.

### RELEVANT FACTS

On October 22, 2008, Defendant Andrew Schrock was charged by Criminal Complaint (docket number 1) with sending threatening communications in violation of 18 U.S.C. § 844(e). Following a Preliminary Hearing held contemporaneously with the instant detention hearing, the Court found probable cause to believe that Defendant committed the offense charged.

Detective Lance Miller of the Marion Police Department testified regarding the circumstances underlying Defendant's arrest. In May 2007, Detective Miller received a referral from the National Center for Missing and Exploited Children regarding "inappropriate sexual conversation" over the Internet between Defendant and "EC," a 15-year-old girl living in California.[1] Detective Miller went to Defendant's home and was

---

[1] In the Criminal Complaint, E.C. is identified as "E.S.," due to a misunderstanding regarding the spelling of her last name.

told that he was at the Marion City Library. Detective Miller then met Defendant at the library. Defendant initially denied knowing E.C., but eventually identified her as a "girlfriend." Defendant told Detective Miller that he would sometimes sit in the City Square Park in Marion, communicating with E.C. on his laptop over the Library's wifi connection, and masturbating. Defendant also admitted having viewed child pornography. Defendant consented to a search of his residence, which revealed two printed computer images of child pornography.

Also seized from Defendant's home were two notebooks with stories which Defendant admitted writing. The first (Government's Exhibit 2) describes an incestuous sexual relationship with a six-year-old girl, while the second (Government's Exhibit 3) describes the kidnaping and rape of a child. Also seized was a notebook (Government's Exhibit 4) listing pornographic websites. Defendant apparently expressed suicidal thoughts and Detective Miller transported Defendant to St. Luke's Hospital, where he checked himself in. Defendant was instructed not to have any further contact with E.C.

On December 16, 2007, Detective Miller received a referral from the Los Angeles County Sheriff's Office regarding inappropriate communications and threats made by Defendant toward E.C. Authorities in California were concerned that Defendant was planning to travel to that state to act on his threats. A printout of the "chat" between Defendant and E.C. in December 2007 was introduced at the hearing as Government's Exhibit 1. In response to the call by California authorities, Detective Miller went to Defendant's residence in Marion, conducted a "doorstep interview," and again instructed Defendant not to contact E.C.

On February 14, 2008, Detective Miller contacted Defendant again, accompanied by a polygraph examiner. Defendant admitted that he had viewed child pornography recently, but said that it was an "accident," and told Detective Miller that he did not print it or download it. Defendant also told Detective Miller, however, that he knew how to "defeat the filters" at the Marion City Library in order to access child pornography.

Defendant acknowledged continuing phone contact with E.C. Defendant admitted that at one time he requested a video of E.C. masturbating in the nude. Defendant also admitted knowing that E.C. was only 15 years old at the time.

In April 2008, Detective Miller was contacted by E.C.'s father, who complained of continuing contact between Defendant and E.C. It was reported that Defendant was referring to suicide. On April 21, 2008, Detective Miller met again with Defendant. Defendant admitted continuing contacts with E.C. and also admitted thoughts of suicide. Detective Miller then delivered Defendant to St. Luke's Hospital.

On April 23, 2008, Defendant was arrested on state charges of possession of child pornography, based on the images found at his residence in May 2007.[2] Defendant was placed on pretrial release and, according to the Pretrial Services Report, trial in that case is scheduled for November 24, 2008.

On October 2, 2008, Detective Miller was again contacted by the Los Angeles County Sheriff's Office. A bomb threat was made to E.C.'s high school through an email account belonging to E.C. E.C. had previously given Defendant the password to her email account and it was believed that Defendant had originated the email. California authorities were concerned that Defendant may be traveling to California to act on the threats.

On September 2, 2008, one of E.C.'s teachers sent an email regarding an advanced drama class. On October 1, 2008, a response was sent to the teacher on E.C.'s email account, which stated:

> I DON'T GIVE A FLYING FUCK ABOUT DRAMA!! UR
> SO FUCKING PATHETIC I WISH SOMEONE WOULD
> HUNT U DOWN AND KILL UR FUCKING ASS!!!

*See* Government Exhibit 6.

Later the same day, another email was sent to the same teacher which reads:

---

[2] The Pretrial Services Report describes the charge as "Sexual Exploitation of a Minor."

3

> ur a pathetic excuse for a drama teacher and i hope u die a
> pathetic horrible death because u don't know drama if it came
> up and bite off ur tiny pathetic dick

*See* Government Exhibit 8.

Still later on October 1, 2008, an email was sent with the following subject line:

> this Friday im gonna blow up the school and kill u u pathetic
> asshole

*See* Government Exhibit 8.

After investigation with Yahoo and Qwest, it was determined that the emails originated from a computer at the home of Katherine Schrock, where Defendant was residing at that time. Defendant was subsequently interviewed by Detective Howard of the Marion Police Department and admitted sending the emails set forth above.

It is also alleged that Defendant falsely reported E.C.'s father for child abuse, which resulted in an investigation by Child Investigative Services. It is further alleged that Defendant listed E.C.'s father's house for sale on four websites.

A search warrant was executed at Defendant's residence on October 21, 2008 and multiple computers were seized. The contents have not yet been analyzed. According to Detective Miller, items "related" to child pornography were identified, but not seized because they were beyond the scope of the warrant. Specifically, Detective Miller indicated the search revealed two folders containing adult pornography, a third folder containing pictures of children in underwear and newspaper articles regarding persons charged with child pornography, and a fourth folder referring to child pornography sites (similar to Government Exhibit 4).

On cross-examination, Detective Miller testified that Defendant's mother expressed concern that Defendant "wasn't right in the head." Detective Miller described Defendant as "polite and cooperative" when questioned. Defendant told authorities that he had no intent to travel to California. There is no evidence that Defendant has ever been violent, although he admitted sending the emails that threatened violence.

Defendant is 24 years old and, according to the Pretrial Services Report, lives with his mother, grandmother, and two siblings. Defendant has been unemployed for the last year, having last worked at Kmart from August 2006 to July 2007. Defendant told the Pretrial Services Officer that he has been diagnosed as being bi-polar and paranoid schizophrenic. According to Defendant, "the doctors believe he may have a Multi Personality Disorder but they have not formally diagnosed him with it." Defendant has been prescribed Seraquil, but has not been taking it for the past two weeks. Defendant denied the use of drugs or alcohol.

Defendant admitted being placed on probation when he was 17 years old for making a bomb threat against his high school. He indicated, however, that "he made the threat in a 'joking' manner, but it was taken out of context."

## CONCLUSIONS OF LAW

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, requires the Court to detain arrestees prior to trial in certain cases if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. at 755.

A finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the appearance of the person as required must be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition of combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the

5

community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the person was on probation parole, or other pretrial release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with sending threatening communications, in violation of 18 U.S.C. § 844(e). Defendant admits sending the emails described above, using an email account belonging to E.C. Among other things, the emails threaten that "im gonna blow up the school." Given the information provided by Yahoo and Qwest, and given Defendant's admissions, the "weight of the evidence" would appear to be strong. Defendant has a history of making similar threatening remarks in the past. Defendant was on pretrial release in state court on the child pornography charges at the time of the threats which give rise to the instant charge. Defendant has threatened suicide on multiple occasions and his mental health condition appears to make his behavior erratic. Defendant has written stories regarding sexual intercourse with a six-year-old and the kidnaping and sexual abuse of a child. Defendant has admitted being in possession of child pornography in May 2007.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open

court of his right to file a motion with the District Court for revocation or amendment of this Order.

## ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (October 23, 2008) to the filing of this Ruling (October 28, 2008) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F).

DATED this 28th day of October, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA